owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience. If the point where the intestate was killed had been a public highway, * * * or if in any other way he had been not only lawfully, but in the exercise of a right, at that point, the defendant would have owed him a duty to see that the cars upon the branch track were properly secured; but, as it was, they owed him no duty, and cannot be charged, as to him, with negligence in not blocking or fastening the cars."

The above quotations show, I think, the distinction between the case under consideration and that of Barry v. Railroad Co., 92 N. Y. 289, referred to in Justice HERRICK'S opinion, where deceased was injured by active negligence on the part of the defendant. The above quotations also show the distinction between this case and that of Lynch v. Nurdin, 1, Adol. & E. (N. S.) 28–30. In the latter case the negligent act was committed by the defendant on the high-way. The plaintiff, at the time of the injury, was where he had a right to be,—on a public street. Here the plaintiff was injured where he had no right to be,—on defendant's premises. He was there merely by its license. The defendant could not injure him by a careless act, although on its premises without right, but owed him no active duty. I think, as to plaintiff, it was not bound to lock up its turntable. I am therefore unable to concur in the views stated in Judge HERRICK'S opinion.

---

## GRIFFIN v. WHITE.

(Supreme Court, General Term, Third Department. February 15, 1893.)

PATENTS FOR INVENTIONS—LICENSE—CONSTRUCTION OF CONTRACT.

Plaintiff, who owned a patent for an improvement in the running gear of wagons, by a contract with defendant, who owned a similar patent, and was a manufacturer of wagons, gave defendant exclusive authority over both patents, with full power to grant licenses and sell rights, it being agreed that for each wagon manufactured and sold by defendant he was to pay plaintiff a certain amount, but for all licenses and rights sold plaintiff was to receive one fourth of the sums received. Defendant had never sold anything but completed wagons, but he afterwards commenced to make and sell the running gear alone. *Held,* that this was an authorized way of granting licenses, and plaintiff, for each gear sold, was not entitled to the amount agreed upon for wagons, but only to one fourth of the amount received for the gear, after deducting the cost of manufacture and a reasonable profit on the material and labor.

Appeal from circuit court, Warren county.

Action by William B. Griffin against J Hyler White, as surviving partner of Edward Joubert on a contract between Joubert & White and Rennsselaer Knapp, which was assigned by said Knapp to plaintiff. On a trial before the court without a jury there was a judgment for plaintiff for part of his demand, and he appeals. Affirmed.

The opinion of the court below was as follows:

"KELLOGG, J. The disposition of this case must depend upon the construction to be given to the contract of March 9, 1881, made between Rennsselaer Knapp and Joubert & White. It would appear by that contract or agreement that Knapp owned at that time some patent for the improvement of buckboard buggies, and that Joubert & White also owned a similar patent, and to combine their patents and save conflict Joubert & White are given exclusive authority

over both patents, with full power to grant licenses, sell rights and territory. and all things incident, in no way restricted as to price, but possessing all the powers of owners of the patents. It appears by the evidence that at the time of making the contract Joubert & White were manufacturers of wagons for sale. having their place of business at Glens Falls, N. Y., and had manufactured and sold the buckboard wagon under their patent, and sold the same prior to the agreement, and were so manufacturing and selling at the date of the agreement. As to all licenses granted and rights and territory sold, Joubert & White being interested in getting the best prices obtainable, no limitation as to price appears in the contract, but it is contemplated by the agreement that Joubert & White might continue the manufacture of wagons, and as to those wagons manufactured and sold by them the price to be paid to Knapp is agreed upon. As to wagons manufactured and sold by Joubert & White they were to pay to Knapp $1.25 each As to licenses granted or rights and territory sold to others, Knapp was to receive one fourth of all sums obtained. At the time the agreement was made Joubert & White made and sold nothing but complete wagons. Subsequently, to exhibit and to advertise the advantages or good qualities of these inventions as applied to the buckboard wagon, and to increase the sale of wagons and the invention, they made, as samples, a number of gear, which included all of the wagon to which the invention attached, viz. the springs, and the board, in part sustained by the springs. These samples, being shown to other wagon makers. brought proposals to buy this gear from Joubert & White, and to this demand Joubert & White gave attention, and thereafter made and sold the 'gear' to the trade. No doubt, under the contract, they had the right to do this. They had the right to use their judgment as to the best way and the course most profitable to adopt to preserve the reputation of their invention wholly embraced in this 'gear,' and instead of selling 'territory' or the right to make and use the patented parts,—the gear,—they might with good reason conclude that the best interest of all concerned would be best promoted by retaining control of the construction, and not take the risk of a bad repute following the imperfect construction by others. It is apparent from the evidence that while Joubert & White continued to manufacture and sell wagons with this patent attachment they have built up a considerable business in the manufacture and sale of the 'gear' also. It is now contended by plaintiff that this 'gear' should be counted a 'wagon,' and plaintiff should be paid, as the successor of Knapp, the $1.25 stipulated to be paid by Joubert & White for each wagon manufactured and sold by them; and it is contended that this method adopted by him is one of the methods which he had a right to adopt in the granting of licenses, and that they should only pay one fourth of the sum received for such licenses. It seems to me that the parties to the contract, in fixing the price ($1.25) to be paid by Joubert & White, only contemplated that such sum should be paid upon each wagon in complete state, (or so far complete as to be properly termed a wagon,) made and sold by them; and this clause of the contract should not be further extended. It seems to me also that the method adopted by defendant to secure a profit from the sale of the patented part of this wagon cannot be taken as an attempt at an evasion of this clause in the contract, but was a reasonable and proper mode of disposing of licenses to use the patent in the construction of wagons by others, having a reasonable regard for the maintenance of the reputation of the invention. This is not an action for infringement. In such an action it would be properly held that the manufacture and sale of the gear for the purpose of being used in the construction of a wagon and in combination with other parts of a wagon, which is the essence of this patent, would be an infringement under the holding in Wallace v. Holmes, 9 Blatchf. 65; but the principle declared there finds no room for application here. Here the only question is whether payment should be made at one fourth of sum actually realized for sales of such licenses or at $1.25 for each gear. The theory advanced by plaintiff that the basis of one fourth affords opportunity to Joubert & White to defraud plaintiff; that the interests of Joubert & White, through this method, might induce them to reduce the price of the royalty or license and increase the price of the material and labor in the 'gear,' and so produce a small sum to divide, and at the same time large profits to them, is hardly tenable. This might be so if Joubert & White had the arbitrary right to determine for themselves the division to be made,—how much for the license, and how much for the labor and material; but obviously such is not the case. Without doubt Joubert & White are interested in selling the 'gear' at the highest possible price. That

necessarily includes the right to use the gear in the construction of a wagon. So far their interests and the interest of Knapp or his successor are identical, and there the power of Joubert & White to bind Knapp or his successor ceases. Under the contract they are to pay one fourth of the sums realized for the license, and that is to be determined, not by Joubert & White, but must be based upon the actual cost of the construction of the gear itself. It is not difficult to determine on such basis what sums are realized for the patent. That actual cost, with a reasonable profit usual in the trade upon such material and labor, taken from the sum realized upon the sale of the gear, would fix with certainty the sum realized for the patent or licenses. This mode of adjustment is consonant with the spirit and terms of the contract, and by it the rights of all are preserved, and a reasonable latitude is given to Joubert & White to exercise their discretion as to the manner of disposing of rights to use the invention with a prudent regard for its repute.

"It only remains in this case to determine what has been realized by defendants on sale of such rights or licenses upon the basis indicated. Too little regard was apparently given upon the trial to evidence which might enlighten the court as to the actual cost of construction of the gear, or as to what is a reasonable trade profit, the patent not being considered. No evidence was offered but that of interested parties, and no full and accurate details given. Counsel, it would seem, did not regard this as of the utmost importance. The plaintiff rested his case without offering any testimony on that point. The defendant White testified that the actual cost of construction, including material and labor, of all 'gear' by him sold, was at least $8 each, and that he sold them for $9 each. He gives the only detail testimony on this subject given by any witness. Knapp, the person with whom the contract was originally made, was produced by plaintiff to contradict White, and he testifies that 'he could furnish them, and make a fair profit on it, for four dollars for the whole thing;' but his testimony lacks exact detail, and is too loose to carry much weight. Besides, he testifies that he has had nothing to do as wagon maker for fourteen years. Mr. Griffin, the plaintiff, is then produced in contradiction of White, and he says 'they could be made for five dollars.' No details are given, and whether he had in mind superior facilities for making is not apparent. They 'could be made' is hardly the standard by which to measure the actual cost or reasonable cost of making gear sold by defendant. It is to be regretted that better data were not supplied to the court, but it was the plaintiff's duty, having the affirmative, to make this reasonably clear. We are forced to accept the evidence of defendant White on this subject as most convincing and reliable. From the evidence we conclude that the actual cost of construction was $8, and the actual sum on each gear realized for the invention or license was $1; and under the terms of the contract one fourth of this, or 25 cents on each gear sold, must be paid to plaintiff."

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

Charles H. Griffins, for appellant.
A. J. Cherritree, for respondent.

PUTNAM, J.  I think there should be an affirmance of the judgment on the opinion of the court below, with costs to respondent. All concur.

---

(67 Hun, 620.)

## WITHERBEE v. PARIS.

(Supreme Court, General Term, Third Department. February 15, 1893.)

SHIPPING—CONTRACTS OF MASTER—LIABILITY OF OWNER.
  Though the master of a boat is the agent of the owner, and can bind him for necessary repairs or expenses to enable the boat to continue her voyage, the owner is not liable if the master obtains them under a special contract on his own credit, or on the credit of some third person.

Appeal from judgment on report of referee.

Action by Robbins M. Witherbee against Charles R. Paris, as administrator of Augustus Hale, deceased, for money loaned the master of a boat